**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesse R Meyer, | No. CV-17-00524-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Megan J Brennan, | |
| Defendant. | |

The parties have completed briefing Defendant's dispositive motion. That briefing does not address crucial aspects of Plaintiff Jesse Meyers's claims in a clear or coherent manner. In particular, Meyer's filings do not present meaningful arguments regarding administrative exhaustion nor do they point to evidence supporting the merits of her exhausted claims. Therefore, Plaintiff's claims fail as a matter of law and Defendant's motion will be granted in full.

## BACKGROUND

As best as the Court can decipher from the filings, the relevant facts are as follows. Plaintiff Jesse Meyer began working for the Postal Service in 2004. (Doc. 121 at 1). As of November 2014, she was working as a City Letter Carrier at the Peoria Main Post Office. (Doc. 121 at 2). Her supervisor at that time was Gregorio Valenzuela and Peoria's Postmaster was Tina Sweeney. On November 19, 2014, Plaintiff injured her shoulder while working. That injury resulted in Meyer having "medical restrictions/limitations" such that she was unable to perform certain tasks. (Doc. 121-2 at 2). It is unclear what

happened immediately after the injury, but Meyer believes the Postal Service, Valenzuela and Sweeney in particular, began discriminating against her based on her inability to perform particular tasks. Based on that alleged discrimination, in May 2016, Meyer began an incredibly complicated journey through the Postal Service's administrative regimes regarding discrimination claims.[1]

Meyer was required to administratively exhaust her claims before filing her complaint in district court. *Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016). To do so, Meyer had to choose between two paths. *Vinieratos v. U.S., Dep't of Air Force*, 939 F.2d 762, 768 (9th Cir. 1991). Meyer could pursue a claim through the Equal Employment Opportunity office. Alternatively, Meyer could pursue a grievance claim with her union. Meyer chose to do both.

**A. EEO Complaints**

In May 2016, Meyer filed an "EEO Complaint of Discrimination." (Doc. 121-2 at 2). That document alleged that from January 2016 through May 2016, Meyer had been required "to perform work task[s] that exceed medical restriction/limitations." (Doc. 121-2 at 2). The document further alleged "[h]arassment . . . concerning limitations," "threats by [management]," and the "continued denial of 45 days of pay for time off due to work injury." (Doc. 121-2 at 2). While that complaint was pending, Meyer filed a second "EEO Complaint of Discrimination."

Meyer's second complaint, filed in December 2016, incorporated a letter that listed a total of twenty-four claims. The letter alleged "discrimination based on Physical Disability and Retaliation" based on events such as individuals speaking with Meyer about an accident and her allegedly being absent from work without permission. (Doc. 121-2 at 60). The letter included unexplained references to events such that it is not possible to read the letter and understand what, precisely, Meyer was claiming. But the letter did include allegations about an interaction in September 2016 where Meyer was not assigned as the carrier for "route 8139." (Doc. 121-2 at 61).

---

[1] This is a highly truncated version of events. Meyer filed a variety of other complaints, both with the Equal Employment Office and her union.

On November 16, 2016, the Postal Service issued a Final Agency Decision on the first EEO Complaint. That decision concluded Meyer had not been "subjected to discrimination." (Doc. 121-2 at 54). Meyer was informed she could either appeal to the EEOC or file a civil action in district court. (Doc. 121-2 at 55). As for the second EEO Complaint, Meyer repeatedly amended that complaint but in November 2017, the Postal Service issued another Final Agency Decision that concluded the evidence did not "support a finding that [Meyer] was subjected to discrimination." (Doc. 121-5 at 15).

### B. Union Grievance

In between Meyer's first and second EEO Complaints she filed a union grievance. That grievance, filed on September 29, 2016, centered on Meyer's attempt to be named the postal carrier for route 8139. (Doc. 121-6 at 64). Meyer had applied for that position, but she had refused to comply with the requirement to submit a doctor's note stating she would be capable of performing the duties of the job. Such a statement was required by the "National Agreement," apparently a reference to the governing collective bargaining agreement for postal workers. (Doc. 121-6 at 60). On November 16, 2016, Meyer's grievance was resolved in favor of the Postal Service based on the lack of a doctor's note. (Doc. 121-6 at 60). Meyer did not seek review of that decision.

### C. Meyer Files Suit

Meyer filed the present suit in 2017 and it eventually came to include all the claims from her two EEO Complaints as well as her union grievance. Meyer alleged claims for disability discrimination, retaliation, and hostile work environment. (Doc. 26 at 12-13). During litigation, however, Defendant struggled to identify the precise basis for Meyer's claims. After discovery ended, Defendant filed a lengthy dispositive motion arguing some of Meyer's claims were not administratively exhausted and other claims failed on their merits. The motion contains nine pages of argument regarding administrative exhaustion.

In opposing Defendant's motion, Meyer identified "the heart" of her claims as consisting of four events: 1) the denial of her request to be the letter carrier for route 8139; 2) the denial of a reasonable accommodation that would allow her to be the letter carrier

for route 8139; 3) the creation of a hostile work environment "based on her disability"; and 4) "numerous adverse actions . . . that resulted in discrete acts of discrimination and retaliation." (Doc. 131 at 10-11). Meyer's opposition did not provide any meaningful argument regarding her alleged failure to exhaust administrative remedies. (Doc. 131 at 28). Instead, Meyer merely argued Defendant had "conflate[d] relevant facts with what constitutes the liability period." (Doc. 131 at 28). The Court is unable to understand the meaning of Meyer's argument.

Defendant's reply pointed out Meyer's failure to substantively address the issue of administrative exhaustion. Defendant argued that failure meant the Court should deem unexhausted all the claims identified in the original motion. (Doc. 133 at 2). As for the particular issue of Meyer's attempt to become the letter carrier for route 8139, or that the Post Office should have somehow accommodated Meyer regarding that position, the reply argued Meyer had opted to pursue that issue through the union grievance route and had not completed the process. Therefore, all claims involving those events were unexhausted. Then, with Meyer's own identification of the factual basis for her claims in mind, Defendant argued there is insufficient evidence to support those claims.

# ANALYSIS

## I. Administrative Exhaustion

Administrative exhaustion is a threshold question that should be resolved before reaching the merits of the underlying claims. *Cf. Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) ("Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim.). "[A] federal employee who alleges employment discrimination must elect to pursue his claim under either a statutory procedure or a union-assisted negotiated grievance procedure; he cannot pursue both avenues, and his election is irrevocable." *Vinieratos v. U.S., Dep't of Air Force Through Aldridge*, 939 F.2d 762, 768 (9th Cir. 1991). *See also Heimrich v. Dep't of the Army*, 947 F.3d 574, 581 (9th Cir. 2020) (same). The referenced "statutory procedure" involves making a "formal EEO complaint." *Vinieratos,* 939 F.2d at 768. Only "after a final disposition of such a formal complaint," can the

employee "seek judicial review." *Id.* at 768-69. Alternatively, the "union-assisted negotiated grievance procedure" requires compliance with those procedures "prescribed in the collective bargaining agreement between [an employee's] union and his employing agency." *Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d Cir. 2006). After following those procedures, the employee must appeal "to the EEOC before bringing suit." *Id.* at 54. Only after the EEOC issues a final decision may the employee bring suit in district court. *Id.*

The statute dictating this dual-track exhaustion regime, 5 U.S.C. § 7121(d), states an employee alleging discrimination "may raise the matter" either through a formal EEO complaint or through her union. The Ninth Circuit recently held "the term 'matter' in 5 U.S.C. § 7121(d) refers to the 'underlying action' in the [union] grievance or the EEO complaint." *Heimrich v. Dep't of the Army*, 947 F.3d 574, 580 (9th Cir. 2020). In other words, the term "matter" "is broader than 'legal theory': it refers to the factual basis of the employee's adverse action." *Id.* Once an employee challenges a particular "underlying government action" through a formal EEO complaint or through her union, she must exhaust the administrative remedies through her chosen procedure. *Id.*

In the present case, Meyer elected to bring the "matter" of the denial of route 8139, and accommodations regarding route 8139, through the union grievance process. Her union grievance stated, in relevant part,

> Is Management in the wrong by not allowing Carrier Jesse Meyer to be the successful bidder of route 8139, after an on the job injury? Also, is Carrier Meyer being discriminated against for being injured on the job?

(Doc. 121-6 at 64). That grievance requested as a "remedy" that Meyer be

> [a]llow[ed] . . . the successful bid on route [8139]. Accommodate her on that route with whatever needs are necessary. Stop discriminating against Carrier Meyer due to her on the job injury.

(Doc. 121-6 at 64). Thus, the undisputed facts show Meyer chose the union grievance route to address the denial of route 8139 as well as the failure to provide accommodations regarding route 8139.

Having elected the union grievance route, Meyer's election was "irrevocable." *Vinieratos*, 939 F.2d at 762 (9th Cir. 1991). Meyer was required to complete the union process, and appeal to the EEOC, before filing suit. Meyer did not do so. Therefore, Meyer's disparate treatment claim involving the denial of route 8139, and the alleged failure to provide her with accommodations regarding route 8139, were not exhausted and Defendant is entitled to summary judgment on that claim.[2]

## II. Retaliation

Meyer's first exhausted claim is for retaliation. "The elements of a prima facie retaliation claim are, (1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008). The parties agree Meyer engaged in protected activity when she made her complaints to the Equal Employment Office. But Defendant argues Meyer cannot satisfy the second or third elements because she has not identified the adverse employment action at issue nor has she shown a causal link between protected activity and the adverse action.

In opposing Defendant's motion, Meyer made practically no effort to respond to either argument. Starting first with the adverse employment action element, Meyer claims "It is clear what happened to Ms. Meyer, when it happened and who on behalf of the Postal Service did it." (Doc. 131 at 27). Meyer did not provide a single cite to the record to support this statement. Contrary to Meyer's belief, it is not enough to assert "[i]t is clear what happened." A party seeking to create a dispute of material fact must "cit[e] to particular parts of materials in the record" and those facts must be admissible. Fed. R. Civ. P. 56(c)(1), (2). The Ninth Circuit has repeatedly warned litigants "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the

---

[2] Defendant describes its arguments regarding exhaustion as brought pursuant to Federal Rule of Civil Procedure 12(b)(6). But a Rule 12(b)(6) motion must be brought before pleading. Fed. R. Civ. P. 12(b). More importantly, however, Defendant cites evidence, in the form of the union grievances, that was not referenced in the complaint. Thus, it appears the proper characterization of Defendant's motion is one for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (ruling "failure to exhaust" should normally be analyzed through summary judgment procedures).

evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). *See also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (holding district court is not required "to scour the record in search of a genuine issue of triable fact"). The Court will not manufacture arguments for Meyer nor will it search the record for admissible facts for her. Because Meyer has not identified the adverse employment action that serves as the basis for her retaliation claim, Defendant is entitled to summary judgment.

Even if the Court were to ignore Meyer's failure to identify the adverse employment action at issue, Meyer also failed to address the third element of her retaliation claim involving but-for causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (requiring but-for causation in retaliation context). Meyer's argument section in her brief regarding causation consists of incoherent or irrelevant statements. Meyer argues causation can be established solely by timing and "[i]n this instance the time provided by defendant's responsible manager is set 'at less then [sic] five minutes.'" (Doc. 131 at 28). In support of this statement Meyer cites a portion of her statement of facts. That portion, however, does not reference a five-minute period. Meyer also argues there is a causal nexus between her activity and the adverse employment action because Defendant failed "to admit singling out of Ms. Schroeder for scrutiny and discipline." (Doc. 131 at 28). There is no explanation who Ms. Schroeder is. Only upon investigation was the Court able to understand why Meyer's argument was so difficult to understand.

Meyer's argument section regarding causation was copied and pasted from another filing in an unrelated case. *See Schroeder v. Brennan*, CV-17-1301, Doc. 81 at 9. That case involved adverse acts allegedly taken by a supervisor within five minutes of protected activity and the plaintiff was Sonja Schroeder. But determining why Meyer's brief contained the particular statements does not excuse Meyer's failure to offer some evidence that might support causation. With no evidence of causation, Defendant is entitled to summary judgment on the retaliation claim.

### III. Hostile Work Environment

Meyer's final exhausted claim is for hostile work environment under the Rehabilitation Act based on her disability. 29 U.S.C. § 791. Assuming such a cause of action exists, Defendant argues Meyer has no evidence "her work environment was objectively hostile based on her disability."[3] (Doc. 123 at 28). Meyer disagrees but appears to misunderstand the very nature of such a claim.

A hostile work environment claim requires a plaintiff "demonstrate: (1) that he was subjected to verbal or physical conduct [based on his disability]; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 686 (9th Cir. 2017). Here, Meyer has not identified evidence supporting the first or third element.

Starting with the first element, Meyer needed to point to evidence showing she was subjected to verbal or physical conduct *because of* her disability. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (holding hostile work environment requires conduct "because of" the protected characteristic). Instead of doing so, Meyer identifies evidence that her supervisor, Valenzuela, treated all employees poorly. In fact, Meyer's own briefing argues "[t]he notion that Supervisor Valenzuela treats everyone badly is no defense. What the record shows is a workplace that allows a bully to intimidate and mistreat employees at will." (Doc. 131 at 25). For purposes of establishing a hostile work environment, it *is* a defense that Meyer treats all disabled and non-disabled employees the same, *i.e.* "badly." With no clear argument or admissible evidence that Valenzuela's behavior was *because of* her disability, Meyer's claim of hostile work environment fails at the outset.

---

[3] The Ninth Circuit has not yet recognized a hostile work environment claim in these circumstances. *See, e.g.*, *Denning v. Cty. of Washoe*, 799 F. App'x 547 (9th Cir. 2020) (address claim after "[a]ssuming that hostile work environment claims are cognizable under the ADA"). But if one were recognized, presumably it would mirror how other courts have handled ADA-based claims. *See also Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.").

Next, even assuming some of Valenzuela's actions were because of Meyer's disability, the admissible evidence shows they were not severe or pervasive enough to alter the conditions of her employment. The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A hostile work environment does not exist merely because an employer engages in "sporadic use of abusive language, [disability]-related jokes, and occasional teasing." *Id.* The Ninth Circuit has outlined "the factors to be considered" when assessing whether a work environment can meet this demanding standard: "the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[4] *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).

Meyer cites a variety of events that allegedly support her hostile work environment claim but those events are difficult to understand and do not present a clear picture of the situation faced by Meyer. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (requiring evaluation of "constellation of surrounding circumstances"). More importantly, however, many of the events described by Meyer are not supported by the underlying evidence. For example, Meyer argues her union steward testified Valenzuela was a "bully" who often targeted Meyer. (Doc. 128-3 at 18). But the union steward also testified Valenzuela treated other employees the same way and that Valenzuela was "[t]he bullying type." (Doc. 128-3 at 18, 26). When asked in particular about an incident where Meyer was required to sit at the gate into the parking lot, the union steward stated only individuals with limitations are required to perform that task and it is "humiliating." (Doc. 128-3 at 30). But the union steward then admitted he had never complained about the practice, no one else had ever complained about the practice, "a lot of rural carriers" are required to do it, and he thought of it as a way for employees with limitations to have

---

[4] "A plaintiff must show that the work environment was both subjectively and objectively hostile." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). There is no question that Meyer perceived the environment as hostile, meaning the Court need only address the objective nature of the workplace.

something to do so they can be paid. (Doc. 128-3 at 31). The union steward also stated Meyer had been assigned to work in a small room that was usually used for the completion of paperwork. (Doc. 128-3 at 32). The union steward did not know of any other employee who had been assigned to work in that room, but it is not clear why Meyer believes working in a small room created a hostile work environment. Her own summary judgment briefing merely describes this assignment as "questionable." (Doc. 128 at 15). Thus, these events, even viewed cumulatively, do not establish Meyer was subject to an "extreme" environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

In addition to the testimony of her union steward, Meyer cites to the testimony of another coworker who stated "from the management side" of the Post Office "there are a number of opinions or biases that are out there about employees being injured on the job." (Doc. 128-1 at 46). The coworker also stated she heard "comment[s]" about individuals faking injuries. (Doc. 128-1 at 46). But the coworker did not identify the "comments" at issue, did not state the comments were aimed at Meyer, or even that the comments were made in Meyer's presence. *See Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (refusing to find hostile work environment when many of the offensive comments "were about other people"). Upon further questioning, the coworker stated the "biases" she was referencing are "in every workplace." (Doc. 128-1 at 47). While it is not clear what this coworker was referencing in particular, behavior that is found "in every workplace" is not a solid basis for a hostile work environment claim. What is more, it is not clear the statements are admissible because they appear to be inadmissible opinions or hearsay. Viewed as a whole, there is insufficient evidence that Meyer's workplace was objectively hostile. Therefore, Meyer cannot satisfy the third element of her hostile work environment claim and Defendants are entitled to summary judgment on this claim.

Accordingly,

…

…

…

**IT IS ORDERED** the Motion to Dismiss in Part and Motion for Summary Judgment (Doc. 123) is **GRANTED**. The Clerk of Court is directed to enter a judgment in favor of Defendant.

Dated this 20th day of August, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge